1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KIRK CALKINS, a married individual,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SEATTLE; DLH INC., a Washington Corporation; CHRISTOPHER LUEDKE; ELIZABETH SHELDON; BILL GRAYUM; GREEN WAY HOMES, a Washington Limited Liability Company; VASILI IALANJI, and GENE IALANJI,<br><br>Defendants. | Case No. 23-cv-01607-RSM<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

## I.    INTRODUCTION

This matter comes before the Court on Defendants City of Seattle, Elizabeth Sheldon, and Christopher Luedke's Motion for Summary Judgment, Dkt. #65.  The Court has previously dismissed claims against Defendants Bill Grayu, Green Way Homes, and Vasili and Gene Ialanji. Dkt. #45.  The remaining Defendants now move to dismiss all remaining claims as a matter of law.  Plaintiff Kirk Calkins has filed an opposition brief.  Dkt. #70.  The Court finds that it can rule without the need of oral argument.  For the reasons below, the Court GRANTS this Motion and dismisses the remaining claims.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 1

## II.    BACKGROUND

Plaintiff Kirk Calkins filed this action in 2023, claiming, *inter alia*, that the remaining Defendants violated the Washington Law Against Discrimination, retaliated against him in violation of 42 U.S.C. § 1983, violated a settlement agreement, and engaged in negligent supervision, "false light," and civil conspiracy.  *See* Dkt. #32.

Mr. Calkins was hired as a truck driver by the Seattle Department of Transportation ("SDOT") in 1993.  Dkt. #66-1 at 3.  He was promoted to Street Use Inspector in 2007, where his responsibilities included conducting inspections and enforcement on permitted construction and temporary uses of the right-of-way.  *Id*.  There was a customer-service component to the job, including responding to emails and letters.  *Id*.

Mr. Calkins had a work-related injury in January 2020—he says his "neck was broken." Dkt. #32 at ¶ 3.30.  This injury kept him off work until October 2020.  Dkt. #69 ("Green Decl."), ¶ 2. When he returned, he received certain ADA accommodations—mainly allowing him to avoid snow and ice conditions in his job.  *See* Dkt. #66-4 ("Calkins Dep."), 65:21-66:19.

On September 15, 2020, one month before he returned to work, SDOT received complaints about Mr. Calkins's online comments to a member of the public, Heather Millner. Dkt. #66-5 at 4.  Ms. Millner is a black woman and a stranger to Mr. Calkins.  Calkins messaged her privately over Facebook Messenger in response to a post concerning the Black Lives Matter movement.  His words are not in dispute:

> Calkins: When the Black race continues to show egnorance [sic] and can not use their head with basic common sense in the decision they make, that is on them. They are not above the law as they think they are,[]we [sic] tired of the im [sic] going to do what I want, when I want attitude, and not be accountable for their actions. We are tired of the protest and looting over thugs, criminals, rapists, fang [sic] bangers. Society is not that, so why in the fuck are we protesting these ignorance [sic] people. We are not in the 60s 70s or 80s when

this was live and well. Your generation,[]has no idea. Make smart decision, go to work every day, provide for your family. Be a law abiding citizen. Unfortunately the morons that we are protesting for did not. Don't wake the sleeping giant, don't kick the laying dog. Armageddon might be upon us sooner than you think.

Millner: Please do not contact me again. BLM END OF STORY

Calkins: To [sic] bad

Millner: I would check your spelling and grammar before ever sending someone the shit you just sent me.

Calkins: Grab your ankles

*Id.* at 9–10.

SDOT investigated the allegations, including interviewing Millner, Calkins, and the complainants. Ms. Millner interpreted Calkins' messages as a threat of violent sexual attack. *Id.* at 4. SDOT determined that Calkins had listed the City as his employer on his Facebook page at the time of the threats, and that those threats violated City rules. *Id.* at 6–8.[1]

Mr. Calkins' Division Director, Elizabeth Sheldon, recommended a 30-day suspension as discipline. Dkt. #66-6. Calkins had a Loudermill hearing with SDOT's then-Director, Sam Zimbabwe, and the suspension was upheld. Dkt. #66-7.

Through all of this, Mr. Calkins was pursing an employment discrimination lawsuit against the City of Seattle for events in 2019. Dkt. #66-8. He filed it before he made the above comments but went ahead and added a claim for retaliation in violation of the First Amendment for the above disciplinary action. Dkt. #66-9.

---

[1] SDOT's investigation also found that Mr. Calkins had made several public Facebook posts depicting Black men committing violent crimes with the following commentary: "Black America why is this alright in today's time?" "The media wont show the truth, we are not going to take a blind eye to Black America in their tactics of taking advantage of hard working Americans." "If you don't think we have a serious Race Issue in this Country you are Lying [sic] to yourself. Why is Black America getting away with this." Dkt. #66-5 at 6 and 12–13. The report states that when he was asked what he meant by these posts, he said that he "posted the above because he was triggered by memories of being bullied and beaten by Black students who were bused to his high school." *Id.* at 6.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 3

That suit was settled with an agreement (the "Settlement") in January of 2022. Dkt. #66-10. Mr. Calkins released all claims that he currently had, that were the subject of the 2020 Lawsuit, and/or based on "any facts (known or unknown) regarding his employment that arose prior to December 14, 2021." *Id.* at ¶ 1.1. In return, the City of Seattle paid him $125,000. *Id.* at ¶ 2.1. Under the title "Other Agreements by Plaintiff, Kirk Calkins," the Settlement provided:

> 3.1 Plaintiff agrees that he will not refer to, reference, and/or rely on any facts and/or allegations that occurred or became ripe prior to December 14, 2021 in any future complaints or concerns regarding the City.

> 3.2 Plaintiff's 30-day suspension continues to be part of Plaintiff's employment record and Plaintiff will withdraw his grievance of that matter.

*Id.* The Settlement had a confidentiality provision stating, in relevant part: "The Parties agree that neither they nor their attorneys shall reveal to anyone, other than as may be lawfully required, any of the terms of this settlement except to disclose that the case has settled." *Id.* at ¶ 12.0.

A few months prior to the Settlement, SDOT received a request from a KNKX reporter under the Public Records Act ("PRA"), chapter 42.56 RCW. Dkt. #66-11. The reporter, Lilly Fowler, asked for all of Mr. Calkins's disciplinary records, specifically regarding the 2020/2021 investigation. *Id.* SDOT notified Calkins of the request, and he filed an action to enjoin SDOT's disclosure of the records. Dkt. #66-12. The court denied Calkins' motion, ruling that he had no expectation of privacy in messages to a stranger, that SDOT had established a nexus between Calkins' threats and the public-facing nature of his job, and that SDOT had substantiated the discipline. Dkt. #66-13 at 7–10. The Court specifically found it more likely than not that Mr. Calkins had indicated on Facebook under his "About Me" page that he was an employee of the City of Seattle at the time of the incident, even if that information was no longer posted. *Id.* at 9–10.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 4

Later in 2022, Fowler made another PRA request, this time for a copy of the Settlement. Dkt. #66-14. In August of 2022, Fowler published an article about Calkins's 2020 threats, his subsequent suspension, and the $125,000 Settlement. Dkt. #66-15. She interviewed Calkins for the article. *See id.*

SDOT's Communications Director sent out an all-SDOT email several days later, noting that SDOT "has been in the news lately" and that equity is an important SDOT value. Dkt. #66-16. The email does not mention Mr. Calkins by name, and instead mentioned equity trainings and employee resources for expressing concerns and making complaints. *Id.* Calkins's manager, Christopher Luedke, knew that the Fowler article was being discussed around SDOT and addressed it in an internal Street Use Inspections meeting on September 7, 2022. *See* Dkt. #66-17 at 2–3. Plaintiff acknowledges that Luedke did not mention him by name in the meeting. Calkins Dep. at 34:13-14. Luedke stated that the article upset him, that he heard some employees had concerns, and there was a discussion of concerns employees might have about the subject. Calkins Dep. at 33:21-34:5, 34:22-35:7, 36:5-9, 42:17- 43:10. Mr. Calkins stated in deposition that some employees at the meeting said that "if this is the case, that person should be fired," or words to that effect. *Id.* at 34:18–21.

On September 30, 2022, former Defendants Gene and Vasili Ialanji from Green Way Homes sent an e-mail to a supervisor of Calkins. Dkt. #66-1 at 3–4. In the e-mail the Ialanji's state, "[i]t seems to me that the only objective here is to get me in as much trouble as possible and keep charging me as much as possible." *Id.* at 4. It was also claimed that Calkins said, "I am a rich kid and can afford it," "Kirk has literally [sic] said that to me verbally, and now I can see it in his actions." *Id.* The email continues, "From here on now I would like to request a different inspector." *Id.* The Ialanji's then state, "This demonstrates that he expects me to do as

he says like a slave listens to his master, and he is not willing to reason or discuss anything with me. His actions say the same thing he said to me verbally… 'you don't want to fight with me cuz you will go down hard.'"" *Id.* Calkins denied making these or similar comments.

On October 5, 2022, Calkins was placed on administrative leave based on this email and a complaint from Bill Grayum, a superintendent of DLH, Inc., related to an inspection at a different site. Dkt. #66-18.

Plaintiff Calkins' conduct in this and other instances was subsequently investigated, a Loudermill hearing occurred on January 20, 2023, and his employment terminated on February 14, 2023. Dkt. #66-21. Mr. Calkins's boss Ms. Sheldon and SDOT Director Greg Spotts found that Mr. Calkins's earlier 30-day suspension showed a continuing pattern. *Id*. at 2–3; Dkt. #66-20 at 2.

Plaintiff Calkins brought this lawsuit in 2023. His claims against Defendants Gene and Vasili Ialanji and Bill Grayum for defamation and tortious interference with a business relationship were dismissed under Rule 12(b)(6). Dkt. #45. This Motion followed.

### III.    DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco,*

*Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Analysis**

**1. § 1983 First Amendment Retaliation**

Mr. Calkins's first claim is that SDOT "engaged in a custom of retaliation" against him because he exercised his First Amendment rights to free speech and to pursue an occupation. Dkt. #32 at 9. In discovery, Defendants asked for a list of the protected statements or activities implicated in this claim. Dkt. #66-22 at 3. Plaintiff's entire response was:

> In 2020 during a period of significant racially related strife within the City of Seattle, Calkins engaged in a Facebook text communication with Heather Millner as a private citizen. Ms. Millner was not an employee of the City of Seattle. Calkins in his communication did not represent that he was employed by the City or in any way represented their views. Calkins' Facebook profile did not state that he was employed by the City. An investigation conducted by City personnel failed to establish that Calkins in any way represented himself as an employee of the City or representing their views. As a direct result of this communication Calkins was wrongfully suspended for 30 days without pay. The same actions were then considered when making the decision to terminate Calkins' employment in 2023.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 7

*Id.* Defendants also asked for the retaliatory acts. Plaintiff's response was that his supervisor Chris Luedke held a staff meeting on September 7, 2022, referencing the Lily Fowler newspaper article. *Id.* at 4. Plaintiff states that his "private communications" with Ms. Millner were "mischaracterized by Luedke to suggest that Calkins was making racially derogatory comments." *Id.* Plaintiff states, "the way they were characterized by Luedke led to Calkins being ostracized by his fellow co-employees." *Id.* Plaintiff states that there was then an "All-City Bulletin" regarding the Lily Fowler article. *Id.* Then he was placed on administrative leave based on "the false claim that Calkins had acted in an inappropriate fashion with two separate contractors from Green Way Homes and DLH, Inc.," and later terminated. *Id.*

A § 1983 First Amendment Retaliation Claim requires the Court to examine "1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

Defendants first argue that the September 7, 2022, staff meeting and "All-City Bulletin" cannot constitute adverse actions for purposes of a retaliation claim. Dkt. #65 at 15. The Court agrees. Under the undisputed facts, the September 7, 2022, staff meeting and e-mail cannot constitute adverse actions. "Mere threats and harsh words are insufficient" to constitute adverse actions. *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998).

On the other hand, Mr. Calkins's 30-day suspension and later termination are classic adverse actions. Defendants maintain that the 30-day suspension cannot be the basis for a new

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 8

claim because of the Settlement. *Id*. at 16 (citing *Haller v. Wallis*, 89 Wn.2d 539, 545 (1978); *Seafirst Ctr. Ltd. P'ship v. Erickson*, 127 Wn.2d 355, 366 (1995)). Defendants spend several pages arguing judicial estoppel, equitable estoppel, res judicata, waiver and release. *Id*. at 18–21. Plaintiff does not substantively respond to these clearly applicable legal concepts. *See* Dkt. #80 at 21.

The Court agrees with Defendants. The Settlement clearly bars any claim Mr. Calkins could bring based on events giving rise to the 30-day suspension, while allowing it to remain on his permanent record. Defendants argue that, "[b]ecause the suspension remained on Calkins' record, under the City's progressive discipline policy it was relevant to any future discipline he received," and the Court agrees. *See* Dkt. #65 at 17. Mr. Calkins fails to adequately explain how the Settlement would prohibit Defendants from relying on the 30-day suspension in subsequent discipline. To the contrary, he states in briefing that he will "concede dismissal of the cause of action for a Settlement Agreement violation," admits that he agreed the suspension would remain on his employment history, and concedes that "[t]here was discussion that this suspension would not be used as a basis for further discipline in the future, but that unfortunately did not become memorialized in the Agreement." Dkt. #80 at 22.

Mr. Calkins might wish to argue he can pursue a First Amendment Retaliation claim based on something other than the facts giving rise to the 30-day suspension. He states in his interrogatory response that he was placed on administrative leave and later terminated because of acting in an "inappropriate fashion with two separate contractors from Green Way Homes and DLH, Inc." It is not sufficiently argued, nor is it clear to the Court, how his actions related to those contractors, clearly within the scope of his work, are protected by the First Amendment. Instead, Mr. Calkins appears to argue that his communications with these contractors were

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 9

merely a pretext used to terminate him. *See* Dkt. #80 at 12 ("When considered in the light most favorable to Calkins [sic] demonstrates that the decision to terminate his employment was related to the Facebook communication, not the complaints from Green Way or DLH."). However, ten pages later he argues that "Calkins' termination is not based upon the 30-day suspension, [sic] is based upon the false and pretextual claims of two contractors which the City seized upon to achieve his [sic] goal of termination Calkins' employment." *Id*. at 22. It is nonsensical to have the interactions with the contractors serve as the sole basis for a First Amendment retaliation claim because, again, they were so clearly within the scope of his work. In addition to being barred by the Settlement, this claim fails to set forth the essential elements and is properly dismissed on summary judgment.

Defendants also argue that Mr. Calkins cannot show *Monell* liability because he cannot point to "a longstanding custom of SDOT retaliating against employees who exercised their First Amendment rights, let alone that such custom was the cause of his injuries" and that Mr. Calkins's statements to Ms. Millner are not protected by the First Amendment because they constitute a threat of sexual assault—"grab your ankles." Dkt. #65 at 22–25. The Court need not address these arguments, but notes that they have substantial merit. After reviewing the evidence to support *Monell* liability presented by Plaintiff, the Court agrees with Defendants that nothing submitted supports the argument that SDOT has a policy or custom of retaliating against employees for exercising their First Amendment rights. *See* Dkt. #72 at 5. In sum, there is quite a bit already in the record that would stand between Mr. Calkins and pursuing this claim, even if he had not agreed to the Settlement.

### 2. Negligent Supervision

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 10

Mr. Calkins's second claim is that "Chris Luedke acted outside the scope of his employment by publicly bringing to the attention of Calkins' fellow employees his exercise of Free Speech resulting in the story by Fowler," that Luedke's intent was to "cause embarrassment and develop conflict between Calkins and his coworkers," that "SDOT management has knowledge that Luedke and Sheldon pose a risk of harm not only to Calkins, but all SDOT employees," and that SDOT management failed to properly supervise Luedke and Shelden, proximately causing him injury.  Dkt. #32 at 9–10.

In discovery, Defendants asked for and received some more details—Mr. Calkins also points to Luedke and Sheldon's failure to give him a promotion and being placed on administrative leave and his later termination as support for this claim.  *See* Dkt. #66-22 at 5.

To establish negligent supervision, a plaintiff must prove that: (1) an employee acted outside the scope of his employment; (2) the employee presented a risk of harm to other employees; (3) the employer knew or should have known that the employee posed a risk to others; and (4) the employer's failure to supervise was the proximate cause of injury. *Briggs v. Nova Servs.*, 135 Wn. App. 955, 966-67 (2006).

The Court does not know quite what to make of this claim. Promotion decisions, administrative leave and termination decisions are all presumed to be within the scope of employment, and there is no evidence that they were not in this case.  As Defendants point out, "SDOT would be vicariously liable if these acts were found discriminatory or retaliatory."  Dkt. #65 at 29.  Such cannot form the basis of a negligent supervision claim as a matter of law.

A manager's comments in a team meeting could be outside the scope of his employment. However, even under Mr. Calkins's version of events, and viewing the evidence and drawing inferences in the light most favorable to the non-moving party, Luedke's comments were not

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 11

outside the scope of his employment as a matter of law.  It is undisputed that Luedke was a manager addressing his team about something that had been published by the media implicating SDOT.  He did not address Mr. Calkins by name.  Mr. Calkins's briefing on this point fails to point to specific comments that crossed the line from managing the team to personal attack.  *See* Dkt. #70 at 18.  Instead, he shifts the allegations to vague and conclusory accusations that he "was terminated because he advocated on behalf of fellow employees further proper rights pursuant to the WLAD and City Policy," and that Luedke was harboring resentment because SDOT only imposed a 30-day suspension instead of terminating Mr. Calkins for the Facebook comments.  *Id*.  The Court will not dig through Mr. Calkins's deposition and other exhibits to piece together supporting evidence.  Mr. Calkins has failed to make a sufficient showing on an essential element of his case and dismissal is warranted on that ground alone.

Further, the risk of harm element is woefully lacking in evidence.  Mr. Calkins's briefing on this point is again conclusory and disconnected from the original allegations.  This claim simply does not match with the facts.

### 3. False Light

Mr. Calkins alleges that "Luedke's act of bringing attention to Calkins' free speech communications was done for the purpose of causing public embarrassment and conflict to Calkins with his co-employees" and that his "reputation has been impacted…"  Dkt. #32 at 10.

This tort requires a plaintiff to prove that a defendant publicized statements placing the plaintiff in a false light and (1) the false light would be highly offensive to a reasonable person; and (2) the defendant knew of, or recklessly disregarded, the falsity of the publication and the false light in which the plaintiff would be placed.  *See Seaquist v. Caldier*, 8 Wn. App. 2d 556, 572-73 (2019).

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 12

The first issue that jumps out to the Court is that Plaintiff has never denied making the Facebook statements at issue.  It is not clear what was *false* about Luedke's statements at the September 7 meeting.  He did not mention Mr. Calkins by name and only referred to a news article that was, in fact, published.

Mr. Calkins argues in briefing that it was "misleading" for Luedke not to inform staff that the Facebook communications occurred almost two years prior and that he had been disciplined as a result.  Dkt. #70 at 20.  The Court finds that this cannot lead to a false light claim as, again, Mr. Calkins was not mentioned by name and because the timing of the communications, the 30-day suspension, and the settlement were all in the article in question.  *See* Dkt. #66-15.

The Court finds that this claim fails for lack of evidence of falsity or being portrayed in a false light by Defendants.

### 4. Settlement Violation

As stated above, Plaintiff is no longer pursuing this claim, and it is properly dismissed.

### 5. Disability Discrimination

Mr. Calkins's claim here is that he is "disabled both because of the work-related physical injury he experienced in 2020 during which his neck was broken as well as a diagnosis of PTSD," that this was known to SDOT management, and that he "experienced termination from his employment of 34+ years because of his disability status."  Dkt. #32 at 11.

For a disability discrimination claim with no direct evidence of discrimination, Washington applies the *McDonnell Douglas* burden-shifting framework.  *Hines v. Todd Pac. Shipyards Corp.*, 127 Wn. App. 356, 371, 112 P.3d 522 (2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). Under this framework, a plaintiff has the initial burden of establishing a prima facie case.  *Id*.  The burden then shifts to

the defendant to present evidence of a legitimate, nondiscriminatory reason for the adverse action. *Id*. If the defendant meets its burden, the plaintiff "must produce sufficient evidence showing that the employer's alleged nondiscriminatory reason for the discharge was a pretext." *Mackey v. Home Depot USA, Inc.*, 12 Wash. App. 2d 557, 459 P.3d 371, 382 (Wash. Ct. App. 2020), *review denied*, 195 Wn.2d 1031, 468 P.3d 616 (Wash. 2020) (internal quotation marks and citation omitted). "The plaintiff carries the ultimate burden at trial to prove discrimination was a substantial factor in employer's actions." *Hines*, 112 P.3d at 529.

To establish a prima facie case of disparate treatment based on disability under WLAD, a plaintiff must show he was: (1) disabled, (2) subject to an adverse employment action, (3) doing satisfactory work, and (4) discharged under circumstances that raise a reasonable inference of unlawful discrimination. *Brownfield v. City of Yakima*, 178 Wn. App. 850, 316 P.3d 520, 533 (Wash. Ct. App. 2014).

Under *Gambini v. Total Renal Care, Inc.*, 480 F.3d 950 (9th Cir. 2007), "conduct resulting from a disability is considered part of the disability, rather than a separate basis for termination."

Defendants first point out that Plaintiff has produced no medical documentation of his PTSD diagnosis. Dkt. #65 at 26 n.11. They point out that the alleged PTSD diagnosis was way back in 2016 or 2017, years before the events leading to his termination. They argue that SDOT had a legitimate, non-discriminatory reason for the discharge and that Calkins has no evidence of pretext.

In Response, Mr. Calkins raises for the first time that he was on the painkiller Percocet at the time he made the Facebook comments and that his comments were the "product of the pain that he was experiencing and the medication he was taking to address this." Dkt. #70 at 16. Mr.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 14

Calkins cites to no evidence in his argument on this claim, other than his own declaration (which is referred to without page or paragraph citation).

On Reply, Defendants sum up the situation:

> Calkins, however, has produced <u>no</u> medical evidence that he was taking narcotic pain medication in September 2020 because of his disability, nor any medical evidence that his pain and pain medication caused him to make racist threats to a stranger over Facebook. He has no evidence, other than his own personal belief, that the painkillers made him do it. His disability discrimination claim must therefore be dismissed. *See Collins v. Boeing Co.*, No. C06-1843RSM, 2008 WL 943152, *6 (W.D. Wash. Apr. 7, 2008) (rejecting *Gambini* defense because plaintiff provided "no medical evidence attributing his excessive computer use on company time to his condition of depression").
>
> Moreover, if Calkins believed his 2021 suspension was the product of disability discrimination he could (and should) have raised this claim in the 2020 Lawsuit. But his 2020 Lawsuit contained no such claim. *See* Exs. H and I to Tilstra Decl. (Dkt. 66). Res judicata bars him from now claiming that his 2021 suspension was illegal disability discrimination. *See, e.g., Hadley v. Cowan*, 60 Wn. App. 433, 439-43 (1991) (res judicata barred claims of undue influence and duress that should have been litigated in prior probate matter between parties that was settled).

Dkt. #72 at 7–8 (emphasis in original).  Defendants point out that Plaintiff still has not provided any medical evidence of PTSD and failed to adequately demonstrate that Defendants were aware of his condition at the time of the disciplinary actions.  Finally, Defendants argue that Plaintiff has failed to produce any evidence that the non-discriminatory reason for terminating him was pretextual. *See id*. at 9.

The Court finds that Plaintiff has failed to make a prima facie case that he was disabled at the time of his conduct resulting in the discipline at issue.  Medical evidence is usually helpful.  There is insufficient evidence that Defendants were aware or could have been aware of Plaintiff's alleged disabilities.  Further, Plaintiff has failed to adequately argue or demonstrate that the

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 15

reasons for his termination—whether right or wrong—were discriminatory or a pretext for discrimination. Given all of the above, this claim fails as a matter of law.

### 6. Civil Conspiracy

Finally, Mr. Calkins claims that Defendants "conspired to negatively impact [his] employment status." Dkt. #32 at 13.

"A conspiracy claim fails if the underlying act or claim is not actionable." *N.W. Laborers & Employers Health & Sec. Trust Fund v. Philip Morris, Inc.*, 58 F. Supp. 2d 1211, 1216 (W.D. Wash. 1999). As the Court is dismissing all of Mr. Calkins's bases for wrongful termination or change to his employment status, this claim too must be dismissed.

The Court further notes that a civil conspiracy claim does not make sense in the context of this case because Defendants were all agents acting on behalf of the same organization. *See Fleming v. Corp. of Pres. of Church of Jesus Christ of Latter-Day Saints*, No. C04-2338RSM, 2006 WL 753234, *7 (W.D. Wash. Mar. 21, 2006).

### IV.    CONCLUSION

Having considered the briefing and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion for Summary Judgment, Dkt. #65, is GRANTED. Plaintiff's remaining claims are DISMISSED. This case is CLOSED.

DATED this 14th day of November, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 16